ROGERS *v.* STOKES.

(*Nashville.* February 7, 1889.)

INJUNCTION. *After judgment. Mistake of law.*

Execution of judgment at law will not be enjoined for an alleged error of law, whereby the court rendering it gave an excessive amount of interest.

FROM WILSON.

Appeal from Chancery Court of Wilson County. GEORGE E. SEAY, Ch.

STATEMENT OF FACTS.

On the 5th day of December, 1859, one Josephus Walker drew a bill of exchange for $2,500 which became the property of the Planters Bank. On January 28, 1861 the bank recovered judgment for $2,698.49. Defendants appealed and gave as securities on their appeal bond S. B. Hardy, John L. Clemmons and A. G. Rogers. The Supreme Court affirmed the judgment of the lower court, and gave judgment on December 22, 1865, against the drawer, indorser, and sureties on the appeal bond for the debt, and also interest at 12½ per cent. from the date of the judgment of the lower court, in all

$4,311.85. Execution issued and was levied on the land of S. B. Hardy. The sale of this land paid one-half of the judgment and interest as of November 10, 1868. All the parties were then insolvent except A. G. Rogers. The Planters Bank had also become insolvent and was in the hands of a receiver. Col. Jordan Stokes was the attorney of the bank. Rogers paid Col. Stokes, on account of the judgment, $500 March 24, 1869; $450 May 22, 1869, and $500 May 26, 1870, which were remitted to the bank.

The proof showed that the bank owed Col. Stokes fees for legal services, which Stokes agreed should be retained as a credit on the judgment against Rogers and he would look to Rogers for payment. On October 20, 1875, the assets of the bank were sold, and among them a balance of $182.59 against Rogers, which afterward became the property of Stokes by purchase. He was thus the owner of the whole debt against Rogers, and on November 23, 1875, they had a settlement in which Rogers executed to Stokes individually his note for $1,400. Rogers made various payments on this note to Stokes, and on March 1, 1883, they had another settlement in which Rogers executed to Stokes the note now in suit for $1,715.36, with J. A. and J. W. Rogers as sureties, on which he made one payment. Col. Stokes gave this note to Walter Stokes on April 27, 1885, and on May 5, 1885, suit was brought on it in the Circuit Court. This bill was filed September 11, 1885, to enjoin

its collection on the ground of fraud and mistake, alleging that previous to the execution of the $1,400 note the bank only claimed a balance of $182.59 on this judgment, as was shown by the sale of its uncollected assets October 20, 1875, and that this was the true amount due; that Stokes knew this fact, and therefore it was a mistake on the part of Rogers to execute the note for $1,400 on its renewal, and a fraud on the part of Stokes to accept it.

The answer denied all fraud, and stated that Stokes advanced large sums to the Receiver of the bank for Rogers, and if credit was given for them, the balance of $182.59 sold by the Receiver was correct, but if credit was not given for them then Rogers owed the amount of the note.

Col. Stokes was quite sick when the bill was filed, and died before the proof was taken.

Rogers denied that Stokes made any advancements for him, and much proof was taken on both sides. He also claimed that the Supreme Court had erred in its judgment rendered December 22, 1865, in allowing interest on the judgment of the lower court at the rate of $12\frac{1}{2}$ per cent. instead of 6 per cent., and that if he was given credit for this difference his payments would exceed his half of the judgment and interest. He also claimed that he discovered this error in 1868, after the sale of the Hardy land, and that Col. Stokes agreed to give him credit for it, but that he had forgotten to claim it from Stokes at the time of

his different payments and settlements with Stokes, and did not recall the fact until after he was sued on this note in 1885, and had never mentioned it to any one.

The proof showed, however, that Rogers had frequently acknowledged to various parties the justness and correctness of the debt for a period of many years, and stated that but for the kindness of Col. Stokes in indulging him so long he would have been ruined.

The Chancellor dismissed the bill, and complainant appealed.

J. S. PILCHER, E. I. GOLLIDAY, and SAM GOLLIDAY for Rogers.

DICKINSON & FRAZER, STOKES, PARKS & STOKES, and R. P. McCLAIN for Stokes.

TURNEY, C. J. The judgment, in part satisfaction of which the note enjoined was given, was rendered by the Circuit Court of Davidson County on January 28, 1861, and affirmed by this Court on December 22, 1865, with interest at twelve and one-half per cent.

It is insisted (as the appeal and affirmance were after the passage of the Act of February 1, 1861, providing " that judgments or decrees, when affirmed in a higher Court, shall be for the judgment or decree of the inferior tribunal, and interest thereon

at the rate of six per cent. per annum instead of twelve and one-half per cent., as now allowed by law.

" Sec. 3. That this Act take effect from and after its passage, and that it expire by its own limitation on the first of July, 1863 ") that therefore the judgment for the twelve and one-half per cent. is a nullity.

There are several answers to this position. We give but one, which, in our opinion, is conclusive. The Court which rendered the judgment is presumed to have the statutes before it, and to have construed them to award the interest.

The statute reducing interest to six per cent., purporting to have passed on January 25, 1865, really passed January 25, 1866. The Legislature convened on the first Monday in October, 1865. The several Acts immediately preceding and succeeding the Act in question bear date of January 25, 1866, leaving no doubt of mistake in the published date. We will add, the first published Act of that session was passed October 20, 1865. Therefore, the Act cited can have no bearing on the question.

Two notes were executed to the late Jordan Stokes, one in 1875 and one in 1883, the latter being a renewal and the note in suit. In the meantime, as well as subsequent to the execution of the last note, frequent promises to pay were made, even up to a very short time before the institution of suit. The facts fully sustain the

decree of the Chancellor, and completely repel the charges of fraud and mistake.

While it was unnecessary for the purposes of this suit, the defendant has very properly introduced leading gentlemen of the pulpit and bar, and triumphantly vindicated the reputation of his deceased father. Opposing counsel, in befitting terms, conceded all that is claimed for his good name. It is not inappropriate for us to say he deserved the reputation he bore with those who have testified as to his high character. The writer knew him socially and professionally for at least a quarter of a century, and for a number of years after had him come before him as an attorney and solicitor in this Court, and has presided with him as a member of this Bench. In every capacity and relation Mr. Stokes gave proofs of integrity and accuracy of thought, of candor and honesty of purpose, and of devotion to right and justice. He was faithful to every trust.

The proof fails to show an agreement to reduce the judgment by the amount of the interest.

Affirmed.